```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```

---------------------------------------X

DAVID LIZCANO,

        *Plaintiff*,

  -against-                              **MEMORANDUM AND ORDER**

                                                 19-CV-2802(KAM)

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.

---------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

      Plaintiff David Lizcano ("plaintiff") appealed the final decision of the Commissioner of the Social Security Administration ("defendant" or the "Commissioner"), which found that plaintiff was not disabled, and therefore not entitled to disability insurance benefits under Title II of the Social Security Act (the "Act").  Plaintiff and the Commissioner have both moved for judgment on the pleadings.

      For the reasons herein, plaintiff's motion for judgment on the pleadings is respectfully DENIED, and the Commissioner's motion is GRANTED.

**Background**

      The parties in this case have filed a joint stipulation of facts that appear in the record, which the court incorporates by reference.  (*See generally* ECF No. 16-1, Joint

Stipulation of Facts ("Stip.").) The court will briefly recount the factual background here only to the extent such facts are relevant to the parties' pending motions.

Plaintiff was first diagnosed with autism when he was two years old, and the diagnosis was confirmed when he was three years old, due to concerns resulting from his poor eye contact, delayed speech, and refusal to play with other children. (*Id.* at 16.) As a child, plaintiff was also hyperactive, and was subsequently diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"). (*Id.* at 17.) Plaintiff testified that even when his ADHD was controlled by medication, he still had problems with concentration. (*Id.* at 2.) By the age of seventeen, plaintiff was also diagnosed with obsessive-compulsive disorder ("OCD"). (*Id.* at 17.) The symptoms stemming from plaintiff's OCD included excessive handwashing, asking people to repeat things over and over again, and stepping on cracks. (*Id.* at 2.) Plaintiff was placed in special education programs until the tenth grade, and received occupational therapy, physical therapy, and speech therapy throughout his schooling. (*Id.* at 17.) Plaintiff graduated from high school, and from Queens Borough Community College in 2017 with a degree in English. (*Id.* at 1.) He has never been employed. (*Id.*)

Since March 1, 2010, plaintiff sought monthly treatment from Dr. Shama Rasool, a board-certified psychiatrist, who diagnosed plaintiff with ADHD, OCD, and autism. (*Id.* at 24.) Dr. Rasool noted that plaintiff exhibited difficulty concentrating, anxiety, and relationship and social issues. (*Id.*) Dr. Rasool stated that plaintiff was "marked limited," meaning effectively precluded from performing the activity in a meaningful manner, in his ability to:

> remember locations and work-like procedures; understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; and interact appropriately with the general public.

(*Id.* at 24-25.)

Dr. Rasool further opined that plaintiff was "moderately limited," meaning significantly affecting but not precluding his ability to perform the activity, in his ability to: "[u]nderstand and remember one or two step instructions; sustain ordinary routine without supervision; work in coordination with or proximity to others without being distracted by them, among other limitations." (*Id.* at 25.)

On October 12, 2015, plaintiff completed a one-time psychiatric consultative evaluation with Dr. Arlene Broska.

3

(*Id.*)  Dr. Broska diagnosed plaintiff with autism, OCD, and a history of ADHD.  Dr. Broska opined that plaintiff exhibited:

> no evidence of limitation in following and understanding simple directions and instructions and performing simple tasks independently.  During the evaluation, there [wa]s no evidence of limitation in maintaining attention and concentration.  There [wa]s no evidence of limitations in memory or maintaining a regular schedule.  There [wa]s evidence for moderate to marked limitation in performing complex tasks without assistance, making appropriate decisions, relating adequately with others, and appropriately dealing with stress.
>
> The results of the examination appear[ed] to be consistent with psychiatric problems and it may significantly interfere with the [plaintiff]'s ability to function on a daily basis.

(*Id.* at 27 (emphasis omitted).)

On October 12, 2015, plaintiff visited Dr. Iqbal Teli, a board-certified physician, for an internal medicine evaluation, and Dr. Teli found him in stable physical condition with no physical restrictions.  (*Id.*)

Plaintiff first filed applications for Social Security disability and Supplemental Security Income benefits pursuant to the Act on August 10, 2015, with an alleged onset date of January 1, 1994.  (*See* ECF No. 1, Complaint ("Compl."), at 1).  The Commissioner denied the applications on October 19, 2015.  (ECF No. 17, Administrative Transcript ("Tr."), at 65-70.)  Plaintiff appealed the decision on November 9, 2015, and

4

requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 74-76.)

A hearing was held on December 14, 2017 before ALJ Laura Bernasconi, who presided over the hearing remotely from Baltimore, Maryland.  (*Id.* at 30.)  Plaintiff was represented by an attorney during the hearing, and a vocational expert testified.  (*Id.*)  The ALJ issued a decision on May 8, 2018, finding that plaintiff was not disabled.  (*Id.* at 7-24.) Thereafter, plaintiff requested a review by the Appeals Council on May 22, 2018.  (*Id.* at 147.)  On March 20, 2019, the Appeals Council denied the request, rendering the ALJ's denial the final decision of the Commissioner.  (*Id.* at 1-6.)  This action in federal court followed.  (*See generally* Compl.).

## **Standard of Review**

A claimant must be "disabled" within the meaning of the Act to receive benefits.  *See* 42 U.S.C. §§ 423(a), (d).  A claimant qualifies as disabled when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *Id.* § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000).  The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any

5

other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Commissioner set forth a five-step sequential evaluation process for determining whether a claimant meets the Act's definition of disabled. *See* 20 C.F.R. § 404.1520. The Commissioner's process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)); *accord* 20 C.F.R. § 404.1520(a)(4). If the ALJ determines that the claimant is or is not disabled at any step, the analysis stops.

"The claimant has the general burden of proving . . . his or her case at steps one through four of the sequential five-step framework established in the SSA regulations." *Burgess*, 537 F.3d at 128 (quotation and citations omitted). "However, because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative

6

obligation to develop the administrative record." *Id.* (quotation and alteration omitted). "The burden falls upon the Commissioner at the fifth step of the disability evaluation process to prove that the claimant, if unable to perform [his] past relevant work [and considering his residual functional capacity, age, education, and work experience], is able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)). If the Commissioner finds a combination of impairments, the Commissioner must also consider whether "the combined effect of all of [a claimant's] impairment[s]" establish the claimant's eligibility for Social Security benefits. 20 C.F.R. § 404.1523(c); *see also id.* § 416.945(a)(2).

Unsuccessful claimants for disability benefits may bring an action in federal court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. §§ 405(g),

7

1383(c)(3).  The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result.  *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir. 2012).  Rather, "[a] district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error.'" *Burgess*, 537 F.3d at 127 (quoting *Shaw*, 221 F.3d at 131 (citation omitted)).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'"  *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (citations omitted, emphasis in original).  Inquiry into legal error requires the court to ask whether "'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'"  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (second alteration in original)).

8

**Discussion**

**I. The ALJ's Decision**

The ALJ in this matter followed the five-step sequential process, as mandated by the Act's implementing regulations, to determine whether plaintiff was disabled.

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his application date of August 10, 2015. (Tr. at 12.)

At step two, the ALJ determined that plaintiff suffered from the severe impairment of autism spectrum disorder, but did not find that the plaintiff's OCD and ADHD were severe impairments. (*Id.*)

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (*Id.* at 13.) The ALJ found that plaintiff had "mild," as opposed to "marked" or "extreme," limitations in the area of understanding, remembering, and applying information, and a "moderate" limitation in the area of interacting with others, concentrating, persisting, maintaining pace, adapting, and maintaining self. (*Id.* at 13-14.)

Furthermore, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform "a full range of

9

work at all levels but with the following nonexertional limitations: [plaintiff could] perform simple, repetitive tasks not on a production based system (meaning no assembly line work)," with occasional interaction with others, and no more than occasional changes in his work environment.  (*Id.* at 15.)  The ALJ found that plaintiff would also need a job coach for the first thirty days of the initial learning phase of any job.  (*Id.*)  In reaching this RFC determination, the ALJ found that plaintiff's graduation from high school, and his degree in English from a community college, supported a finding that plaintiff was not disabled.  (*Id.* at 16.)  The ALJ also noted that plaintiff's medication "significantly reduce[d] his daily symptoms," and that his doctors had observed that "he is calmer, more able to focus, less restless, and his obsessions and compulsions are much less frequent and intense after good compliance with his medication regimen."  (*Id.*)  The ALJ acknowledged that plaintiff's conditions "may cause him limitations," but nonetheless found that his symptoms "may not exist at the level of severity assumed by [plaintiff's] testimony . . . and may have other mitigating factors against their negative impact on [plaintiff's] ability to engage in work activity."  (*Id.*)

In coming to an RFC determination, the ALJ also considered the medical opinion evidence in the record.  The ALJ

10

assigned "great weight" to the opinion of a state agency medical consultant, who "assessed [plaintiff] with severe autistic disorder and found he ha[d] only moderate restrictions in activities of daily living, moderate restrictions in maintain[ing] social functioning, and moderate difficulties maintaining concentration." (*Id.* at 17.) The ALJ likewise assigned "great weight" to the opinion of the consultative examiner, Dr. Broska, who opined that plaintiff had "limitations between moderate and marked." (*Id.*) The ALJ found, however, that based on Dr. Broska's examination findings and the other evidence in the record, plaintiff's "level of functioning [fell] closer to the moderate end of that range rather than the marked end." (*Id.*) The ALJ next assigned "great weight" to a medical report of examiners from a community services center, which concluded plaintiff "function[ed] at the low end of the average range," despite "functioning in the high average range of intelligence." (*Id.* at 17-18.) Finally, the ALJ accorded "partial weight" to the opinion of Dr. Rasool, plaintiff's treating psychiatrist, because "while [Dr. Rasool] state[d] [plaintiff] has many marked limitations[,] [Dr. Rasool] also state[d] [plaintiff] [was] stable on his medications." (*Id.* at 18.) The ALJ found that this medical opinion evidence, and the other evidence in the record, supported a finding that plaintiff

could perform simple, repetitive tasks with only the aforementioned limitations. (*Id.*)

At step four, the ALJ noted that plaintiff had no past relevant work experience. (*Id.*) At step five, the ALJ found that plaintiff was capable of performing work that was available in the national economy, such as working as a laundry worker, a bakery worker, or a mail sorter. (*Id.* at 19.) The ALJ thus found that plaintiff was not disabled under the Act. (*Id.* at 20.)

## II. The ALJ Did Not Err in Determining that Plaintiff's OCD and ADHD Were Not Severe Impairments

Plaintiff argues that the ALJ erred by finding that his OCD and ADHD in combination were not severe impairments. (*See* ECF No. 11-1, Plaintiff's Memorandum in Support ("Pl.'s Mem."), at 6-7.)

An impairment is not severe if it does not significantly limit the claimant's physical or mental capacity to perform basic work activities. 20 C.F.R. § 416.920(c); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). With respect to psychiatric abilities, "basic work activities" include understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing

with changes in a routine work setting.  20 C.F.R. § 416.921(b)(3)-(6).

Here, the ALJ reasonably determined that plaintiff's OCD and ADHD did not significantly limit his physical or mental capacity to perform basic work activities.  According to the record, plaintiff's OCD manifests in compulsive behavior such as frequent handwashing, light and sound sensitivity, inability to tolerate a woman's voice on the radio, and his obsession with a scary movie which initially triggered his OCD, among other pre-occupations.  (Stip. at 2, 5, 6.)  Plaintiff testified that his ADHD makes him hyperactive, and forces him to move a lot and have difficulty concentrating.  (*Id.* at 2.)  Plaintiff also testified that his OCD and ADHD symptoms are controlled by medication.  (*Id.* at 2.)  Plaintiff testified that his ADHD medication, Concerta, helped him focus, and that his ADHD was "easier" and more "controlled" when he used medication, which helped him "keep a rational lid on things."  (*Id.* at 2.)  Plaintiff's doctors noted that medication was effectively treating his OCD and ADHD symptoms, and plaintiff's treating psychiatrist, Dr. Rasool, found that plaintiff was "stable with medication."  (*Id.* at 24; see Tr. at 441.)

Where a claimant's mental impairment is "effectively managed through medication," the ALJ does "not err in determining that [it] was not a severe mental impairment."

13

*Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (summary order); *see Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (affirming ALJ's denial of benefits where "[t]he reports of [the claimant's] treating psychiatrists and most of her consulting doctors during the review period indicate[d] . . . that her condition improved with medication").

The record here, including the medical opinion evidence and plaintiff's own testimony, stated that plaintiff's OCD and ADHD symptoms could be controlled by medication, and thus did not significantly limit his mental capacity to perform basic work. The ALJ thus reasonably found that plaintiff's OCD and ADHD were not severe impairments. The ALJ properly incorporated them into the RFC determination by noting that plaintiff could only perform basic work with certain limitations.

### III. The ALJ's RFC Determination Was Supported by Substantial Evidence

Plaintiff contends that the ALJ failed to follow the treating physician rule when weighing the medical opinion evidence and that, as a result, the ALJ's RFC determination was not supported by substantial evidence. (*See* Pl.'s Mem. at 7-19.) The ALJ accorded "great weight" to all of the medical opinions in the record, except for the opinion of Dr. Rasool, who had been plaintiff's treating psychiatrist since 2010, and

14

whose opinion the ALJ accorded "partial weight." (*See id.* at 9.)

Under the regulations in place at the time plaintiff filed his claim,[1] the ALJ was to "defer 'to the views of the physician who has engaged in the primary treatment of the claimant.'" *Cichocki*, 534 F. App'x at 74 (quoting *Green-Younger*, 335 F.3d at 106). "However, '[a] treating physician's statement that the claimant is disabled cannot itself be determinative.'" *Id.* (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)). "Rather, 'a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)' will be given 'controlling weight' if the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)).

"An 'ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the

---

[1] The Commissioner has revised its rules to eliminate the treating physician rule, and ALJs are now to weigh all medical evaluations, regardless of their sources, based on how well-supported they are, and their consistency with the remainder of the record. *See* 20 C.F.R. §§ 404.1520b; 416.920c. Claims filed before March 27, 2017, however, are still subject to the treating physician rule. *See id.* § 404.1527(c)(2). Plaintiff filed his claim on August 10, 2015. Accordingly, the court applies the treating physician rule in the instant case. *See, e.g.*, *Conetta v. Berryhill*, 365 F. Supp. 3d 383, 395 n.5 (S.D.N.Y. 2019).

15

opinion,' including: '(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). "The ALJ must then 'comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.'" *Id.* (quoting *Burgess*, 537 F.3d at 129). The regulations also require that the ALJ "always give good reasons" in determining the weight assigned to the claimant's treating source's opinion. *See* 20 C.F.R. § 416.927(c)(2); *Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998). The ALJ is not required to cite each factor explicitly in the decision, but must apply the substance of the rule. *Halloran*, 362 F.3d at 32.

The court does not find that the ALJ erred by according "partial weight" to Dr. Rasool's opinion, due to what the ALJ found to be inconsistencies in the record. The ALJ found that Dr. Rasool's opinion was "vague" because she opined that plaintiff "ha[d] many marked limitations" while also stating that plaintiff was "stable on his medications," and Dr. Rasool failed to show "whether these limitations exist[ed]

16

before or after the effects of his medication" were taken into account. (Tr. at 18.)

The record indicates that Dr. Rasool's assessment of plaintiff's "marked" limitations was inconsistent with the opinions of the other medical experts and plaintiff's treatment history, which indicated that medication significantly reduced his symptoms and improved his level of functioning. (*See id.* at 18.) It is also noteworthy that Dr. Rasool herself noted that plaintiff was "stable" when he used medication. (*Id.* at 440.)

"[T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran*, 362 F.3d at 32. In addition to the other medical opinions noting that plaintiff's symptoms were reduced when he was on medication, the state agency medical consultant "found [plaintiff] ha[d] only moderate restrictions in activities of daily living, moderate restrictions in maintain[ing] social functioning, and moderate difficulties maintaining concentration." (*Id.* at 17.) Furthermore, a medical report of examiners from a community services center found that plaintiff "function[ed] in the high average range of intelligence," "scored well within the normal range for attention and memory findings because his medications adequately

17

control his autism and OCD symptoms," and "scored in the 'high average' to 'superior' ranges on tests measuring attention, concentration, and mental control." (*Id.*)  Plaintiff also graduated from a community college in 2017 with a degree in English, and reported that he got "A's and B's" in his college courses.  (*Id.* at 410.)

It is true, as plaintiff avers, that an ALJ must fill in any clear gaps in the administrative record before assigning a treating physician's opinion less than controlling weight.  However, there were no such gaps here.  There was significant evidence in the record that plaintiff's symptoms were mild or moderate at worst, particularly when they were managed with the medication.

In contrast to Dr. Rasool's opinion, Dr. Broska's opinion, which the ALJ afforded "great weight" even though it was based on a one-time consultative examination, was consistent with the overall record.  *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (non-treating "sources [can] override treating sources' opinions provided they are supported by evidence in the record").  Dr. Broska opined that plaintiff had no limitations in following and understanding simple directions and instructions, or performing simple tasks independently.  Indeed, in addition to the evidence described above, Dr. Broska noted that plaintiff reported the capacity to perform simple

18

tasks, such as dressing, bathing, grooming himself, cooking, and doing household chores, like cleaning his room, the bathroom, and the kitchen. (Stip. at 26.) Given this objective evidence supporting Dr. Broska's opinion, the ALJ did not violate the treating physician rule by according it "great weight," even though it was based on a one-time assessment.

The ALJ's ultimate RFC determination took into account all of plaintiff's limitations, including his OCD and ADHD, even though the ALJ did not find plaintiff's OCD and ADHD to be severe impairments. The ALJ found that plaintiff could perform simple and repetitive tasks, without production quotas because of his concentration deficits and the increased distractibility associated with ADHD and OCD, and found that plaintiff should be limited to only occasional interaction with others and workplace changes, due to his deficits in social functioning and stress adaptation. (*See* Tr. at 18.) The ALJ also found that plaintiff would need a job coach for the first thirty days of any job. (*Id.* at 15.) This RFC was supported by substantial evidence, including medical opinion evidence and plaintiff's own statements.[2]

---

[2] Plaintiff also argues that the ALJ posed an improper hypothetical question to the vocational expert, because the hypothetical did not incorporate additional limitations. (*See* Pl.'s Mem., at 21-22.) As discussed above, the ALJ properly weighed all the evidence and arrived at an RFC determination that was supported by the record, and so there was no obvious flaw in the hypothetical that was posed to the vocational expert.

## Conclusion

For the reasons above, plaintiff's motion for judgment on the pleadings is respectfully DENIED, and the Commissioner's motion is GRANTED.  The Clerk of Court is directed to enter judgment in favor of defendant and close this case.

**SO ORDERED.**

Dated:    Brooklyn, New York
          December 4, 2020

                                            /s/
                                    Hon. Kiyo A. Matsumoto
                                    United States District Judge